IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CR-15-172-D |
| WESLEY TAVION GRANT, a/k/a Olajawan Armond Bush, and LARENZO MONTEL GABOUREL, | ) | |
| Defendants. | ) | |

## **O R D E R**

On January 12, 2016, the Court commenced a jury trial in this case of the charges against Defendants Wesley Tavion Grant a/k/a Olajawan Armond Bush and Larenzo Montel Gabourel. Two co-defendants were not present for trial; Defendant Alvin Deon Norman has not been arrested, and Defendant Paul E. Thomas pleaded guilty before trial to a superseding indictment and is expected to testify for the prosecution as a cooperating witness. The Indictment charges as follows: Count 1, conspiracy among all defendants to possess with intent to distribute and to distribute phencyclidine (PCP) from May 1 to May 19, 2015, in violation of 21 U.S.C. § 846; Count 2, distribution of PCP by Mr. Grant, Mr. Norman, and Mr. Thomas on May 19, 2015, in violation of 21 U.S.C. § 841(a)(1); Count 3, possession with intent to distribute PCP by all defendants on May 19, 2015, in violation of 21 U.S.C. § 841(a)(1); and Count 4, possession of a firearm by Mr. Gabourel in furtherance of a drug trafficking crime as charged in Counts 1 and 3, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

After completing jury selection, the Court convened a *James*[1] hearing on January 13, 2016, outside the presence of the jury to determine the admissibility of certain out-of-court statements of the alleged co-conspirators as nonhearsay under to Fed. R. Evid. 801(d)(2)(E). The government appeared through Assistant United States Attorneys Nicholas Patterson and Robert Don Gifford, II. Mr. Grant personally appeared with appointed counsel, Assistant Federal Public Defender Paul Antonio Lacy and attorney Eddie Valdez. Mr. Gaboruel also personally appeared with appointed counsel, C. Merle Gile and Keegan Harroz. The Court heard the testimony of FBI Special Agent David Wardlaw and received evidence of 15 electronic text messages that the government proposes to introduce at trial. Agent Wardlaw summarized statements made by Mr. Thomas during two interviews with FBI agents, identified the users of cell phone numbers that appear on screenshots of the text messages, and explained the content of the messages. Upon consideration of the hearing evidence and the arguments of counsel, the Court issues its findings.

To establish the admissibility of statements under Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence: (1) "'a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy.'" *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (*quoting United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994)); *see United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007). In making the necessary findings, the court "may consider and rely on the actual coconspirator statements

---

[1] *United States v. James*, 590 F.2d 575 (5th Cir. 1979).

the government seeks to admit to determine whether a predicate conspiracy existed." *Owens*, 70 F.3d at 1124 (citing *Bourjaily v. United States*, 483 U.S. 171, 181 (1987)). There must be independent evidence other than the statements themselves, however, linking the defendant to the conspiracy. *See id*. "[A] coconspirator's testimony regarding 'direct observations and contacts with defendant' qualifies as independent evidence." *Owens*, 70 F.3d at 1125 (quoting *United States v. Hernandez*, 829 F.2d 988, 995 (10th Cir.1987)). Also, because hearsay evidence may be used to determine preliminary questions of admissibility under Fed. R. Evid. 104(a), statements a co-conspirator made to the case agent during the investigation and the agent's testimony summarizing these statements at the hearing may be considered for this purpose. *Owens*, 70 F.3d at 1124.

As to the third element of admissibility, "[s]tatements by a conspirator are in furtherance of the conspiracy when they are 'intended to promote the conspiratorial objectives.'" *Townley*, 472 F.3d at 1273 (quoting *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)). "Such promotion occurs through statements that explain events of importance to the conspiracy in order to facilitate its operation, statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, and statements of a coconspirator identifying a fellow coconspirator." *Id*. (internal quotations and citations omitted); *see also United States v. Gutierrez*, 48 F.3d 1134, 1137 (10th Cir. 1995); *United States v. Perez*, 989 F.2d 1574, 1578-79 (10th Cir. 1993) (en banc).

Applying these principles to the hearing evidence in this case, the Court finds by the preponderance of the evidence that a conspiracy existed among the defendants as charged in Count 1 of the Indictment. The Court further finds, however, that the conspiracy shown by the evidence was first formed when the defendants met together as a group in Oklahoma City and discussed a means of making money. The object of the conspiracy was to possess with intent to distribute and to distribute PCP in the Oklahoma City area. The date of this discussion was identified at the hearing as May 16, 2015, but regardless of the exact date, the government presented insufficient evidence to support a finding that a conspiracy to engage in illegal drug trafficking existed before Mr. Thomas arrived in Oklahoma on a trip from California with Mr. Norman and Mr. Gabourel as passengers, and discussed selling PCP with the defendants at the Invitational Apartments in Oklahoma City. Therefore, the Court finds that the only statements described in the Government's *James* Notice [Doc. No. 68] at page 8 that are admissible under Rule 801(d)(2)(E) is the last item, which describes generally the discussion at the Invitational Apartments and states: "Mr. Grant and Mr. Gabourel specifically asked [Mr. Thomas] if he knew anyone who would buy the PCP or if he could connect them with someone who could buy it." In addition to these statements, all of the text messages sent by Mr. Thomas to arrange a sale of PCP to a confidential informant are admissible under Rule 801(d)(2)(E).[2]

---

[2] Some statements allegedly made outside of the conspiracy may be admissible against a particular defendant under another evidentiary rule, such as Fed. R. Evid. 801(d)(2)(A). The Court will address the admissibility of any such statements in ruling on contemporaneous objections at trial.

The Court finds from independent evidence concerning the activities of Mr. Grant and Mr. Gabourel that they were members of the conspiracy. This evidence includes statements of Mr. Thomas that he observed Mr. Gabourel "cutting" or diluting the PCP for sale and evidence that Mr. Grant accompanied Mr. Thomas and Mr. Norman in making a sale of two of the packaged units of PCP to a confidential informant, while carrying a third unit that was available for sale if needed.[3] Additional evidence of the defendants' participation in the conspiracy was obtained from the execution of a search warrant for the apartment involved in the PCP trafficking. Finally, the Court finds that all statements made by the defendants in the discussion of PCP trafficking and by Mr. Thomas in the text messages were made in the course of and in furtherance of the conspiracy. The statements were made to facilitate operation of the conspiracy and to identify the conspirators' roles in it.

In summary, the Court finds that the last item described on page 8 of the Government's *James* Notice [Doc. No. 68] and the text messages sent by Mr. Thomas comprise co-conspirator statements that are admissible against Mr. Grant and Mr. Gabourel under Rule 801(d)(2)(E).

IT IS SO ORDERED this 15th day of January, 2016.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[3] The additional unit carried by Mr. Grant was packaged in the same manner as the two units sold in the controlled buy. Although this quantity might be consistent with personal use, a stronger inference from the facts in evidence – including Mr. Grant's 2013 conviction in Oklahoma of possession of PCP with intent to distribute – is that Mr. Grant possessed the PCP for distribution. If the trial evidence shows the unit was secreted on Mr. Grant's person in the manner represented by the government, an even stronger inference of drug trafficking could be drawn.